UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LA VON HANEY, | No. 2:18-cv-1836 KJN P |
| Plaintiff, | |
| v. | ORDER AND FINDINGS AND RECOMMENDATIONS |
| DR. RICHARD CROSS, et al., | |
| Defendants. | |

I. Introduction

Plaintiff is a state prisoner, proceeding pro se and in forma pauperis, with a civil rights complaint under 42 U.S.C. § 1983. Plaintiff's second amended complaint is before the court. Despite amendments, the undersigned finds that plaintiff fails to allege facts sufficient to state an Eighth Amendment claim. Accordingly, the court recommends that plaintiff's second amended complaint be dismissed without prejudice, but without leave to amend.

II. Screening Standards

Federal courts must engage in a preliminary screening of cases in which prisoners seek redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint "is frivolous, malicious, or fails to state a claim upon which

////

relief may be granted," or "seeks monetary relief from a defendant who is immune from such relief." Id. § 1915A(b).

A pro se plaintiff, like other litigants, must satisfy the pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure. Rule 8(a)(2) "requires a complaint to include a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 554, 562-63 (2007) (citing Conley v. Gibson, 355 U.S. 41 (1957)). While the complaint must comply with the "short and plain statement" requirements of Rule 8, its allegations must also include the specificity required by Twombly and Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

To avoid dismissal for failure to state a claim a complaint must contain more than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555-57.  In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Iqbal, 556 U.S. at 678.

Furthermore, a claim upon which the court can grant relief must have facial plausibility. Twombly, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.  When considering whether a complaint states a claim upon which relief can be granted, the court must accept the allegations as true, Erickson v. Pardus, 551 U.S. 89 (2007), and construe the complaint in the light most favorable to the plaintiff, see Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

III.  Title 42 U.S.C. § 1983

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the

> Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"  Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)).

To state a claim under § 1983, a plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights.  See Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002) (same).  There must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See Ortez v. Washington County, State of Oregon, 88 F.3d 804, 809 (9th Cir. 1996) (finding dismissal of certain defendants proper because Ortez failed to allege each defendant "knew of or participated in activities connected to the § 1983 violations"); see also Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (requiring personal participation in the alleged constitutional violations).

IV.  Plaintiff's Second Amended Complaint

Plaintiff names as defendants Dr. Cross, employed at Shasta Regional Medical Center, as well as two John Does, also employed at Shasta Regional Medical Center:  a physical therapist and an anesthesiologist.  Plaintiff alleges the following:

On October 12, 2016, defendant Dr. Cross, performed a total knee arthroplasty, replacing plaintiff's left knee.  During the procedure, Dr. Cross was deliberately indifferent by knowingly inserting material in plaintiff's left knee that caused his left leg to be longer than his right.

On October 13, 2016, John Doe physical therapist (hereafter "therapist") got plaintiff out of bed, walked the hall, and then approached the stairway.  The therapist was deliberately indifferent to plaintiff's serious medical needs by failing to follow proper procedures and instruct plaintiff on the correct method to mount stairs after undergoing recent knee replacement surgery.  The therapist, who previously worked at a prison, was fully engrossed in conversation with the escorting officers and failed to instruct plaintiff to step up with his body weight on his good leg, and bring the leg that had been operated on up next, which would have been the correct method.  As a result, plaintiff stepped on the stair with his left foot, placing his body weight on his left

3

knee. As a result of the therapist's deliberate indifference to established therapeutic procedure, the therapist failed to intercede and stop plaintiff from incorrectly ascending the stairs, resulting in a loud "pop" and plaintiff nearly falling to the floor, screeching in pain. One of the escorting officers moved quickly to stop plaintiff from falling. The therapist, still unaware of what had happened, and showing deliberate indifference to plaintiff's visibly agonizing pain, urged plaintiff to keep trying to go up the stairs. Even the correctional officers appeared alarmed at the therapist's instructions. Plaintiff told the therapist that plaintiff could not put any weight on the knee and something was very wrong. Plaintiff had to be held upright by the officers holding plaintiff's arms. Yet, the therapist continued to insist that plaintiff mount the stairs, and only after plaintiff refused was a wheelchair obtained and plaintiff returned to his room. Plaintiff then had to insist to the therapist that plaintiff needed an x-ray, which determined plaintiff's left kneecap was dislocated. Because plaintiff had eaten, surgery was postponed until the next day. Due to Dr. Cross' unavailability, a different surgeon reattached the kneecap on October 14, 2016, and a brace was applied.

Around October 16, 2016, plaintiff noticed blisters on his lower left shin; an LVN explained the blisters were the result of burns caused by something the defendant John Doe anesthesiologist did while plaintiff was anesthetized. As a direct result of the anesthesiologist's deliberate indifference, plaintiff suffered permanent scars and tissue damage, which has worsened since plaintiff filed this action, citing an exhibit referencing "venous insufficiency of leg." (ECF No. 14 at 4, 30.)

Once plaintiff was able to walk without a walker, he noticed that he had a limp which he had not had before surgery. Following numerous complaints, plaintiff's PCP and an LVN measured plaintiff's legs and discovered that his left leg is 1-1/2 inches longer than his right leg. Plaintiff filed administrative appeals, which were forwarded to Dr. Cross. Subsequently, Dr. Cross requested a scanogram/orbital roentgenogram of plaintiff's lower extremities to evaluate plaintiff's leg lengths. The CT bone length study determined that plaintiff's left lower leg is 10mm greater than his right lower leg. (ECF No. 14 at 25-26.) Dr. Cross attempted to minimize the difference, stating that the limp "represents no significant change from [plaintiff's] normal

anatomy," and that plaintiff would "benefit from a heel lift 5-10mm in thickness . . . to help compensate for his leg length difference." (ECF No. 14 at 5.)  As a result, in addition to the limp and chronic pain, plaintiff can no longer stand for long periods of time or run, and can only walk about the distance of a football field before he must sit and rest his left leg, and other restrictions. (ECF No. 14 at 5-6).

Plaintiff seeks injunctive relief requiring defendant Dr. Cross and numerous nonparties at Pelican Bay State Prison and the Shasta Regional Medical Center to preserve all medical records, notes, emails, logs, and other documents relevant to plaintiff's claims, as well as money damages.

Plaintiff renewed his motion for injunctive relief on February 6, 2020, and included a request to preserve transport and security records from his transport to and from Shasta Regional Medical Center, as well as during his hospitalization. (ECF No. 16.)

V. Analysis

    A. Eighth Amendment: Deliberate Indifference

        1. Governing Standards

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994).  The Eighth Amendment "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976). Conditions of confinement may, however, be harsh and restrictive. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986), abrogated in part on other grounds by Sandin v. Conner, 515 U.S. 472, 482-83 (1995). A prison official violates the Eighth Amendment only when two requirements are met:  (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See Farmer, 511 U.S. at 834.  Thus, to violate the Eighth Amendment, a prison official must have a

"sufficiently culpable mind." See id.

Not every claim by a prisoner relating to inadequate medical treatment states a violation of the Eighth Amendment. Estelle, 429 U.S. at 105. Rather, a prisoner must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id., 429 U.S. at 106; Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). A medical need is serious "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1991) (quoting Estelle, 429 U.S. at 104), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997). Factors indicating seriousness are: (1) whether a reasonable doctor would think that the condition is worthy of comment; (2) whether the condition significantly impacts the prisoner's daily activities; and (3) whether the condition is chronic and accompanied by substantial pain. See Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (*en banc*); McGuckin, 974 F.2d at 1060 (condition that "significantly affects an individual's daily activities" is actionable").

Next, plaintiff must show that the defendant's response to his objectively serious medical need was deliberately indifferent. Jett, 439 F.3d at 1096. To establish deliberate indifference, a prisoner must allege facts to show: (1) a purposeful act or failure to respond to the prisoner's pain or possible medical need; and (2) harm caused by the indifference. Id. "Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer, 511 U.S. at 837). "If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk." Toguchi, 391 F.3d at 1057 (internal quotation and citation omitted).

The requirement of deliberate indifference is less stringent in medical needs cases than in other Eighth Amendment contexts because the responsibility to provide inmates with medical care does not generally conflict with competing penological concerns. See McGuckin, 974 F.2d

6

at 1060. Thus, deference need not be given to the judgment of prison officials as to decisions concerning medical needs. See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989). The complete denial of medical attention may constitute deliberate indifference. See Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986). Delay in providing medical treatment, or interference with medical treatment, may also constitute deliberate indifference. See Lopez, 203 F.3d at 1131. Where delay is alleged, however, the prisoner must also demonstrate that the delay led to further injury. See McGuckin, 974 F.2d at 1060.

Negligence in diagnosing or treating a medical condition does not, however, give rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 106. Moreover, a difference of opinion between the prisoner and medical providers concerning the appropriate course of treatment does not give rise to an Eighth Amendment claim. See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (prisoner "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances").

### 2. Discussion

#### a. The Physical Therapist

Taking plaintiff's allegations as true, plaintiff contends that the physical therapist failed to follow proper procedures and instruct plaintiff on how to correctly mount the stairs following knee replacement surgery in deliberate indifference to established therapeutic procedure. Instead, the therapist was engaged in conversation with the correctional officers. As a result, plaintiff stepped on the first stair with his left leg, the one in which his knee had been replaced, and suffered a dislocated kneecap as a result.

However, the therapist's failure to properly instruct plaintiff on mounting the stairs while talking with correctional officers does not constitute deliberate indifference. Rather, such allegations attempt to transform a negligence action into an Eighth Amendment violation. Negligence and even gross negligence do not constitute deliberate indifference. Farmer, 511 U.S. at 835-36, & n.4. "With deliberate indifference lying somewhere between the poles of negligence at one end and purpose or knowledge at the other, the Courts of Appeals have routinely equated deliberate indifference with recklessness." Id. at 836. Plaintiff fails to allege facts demonstrating

1  that the therapist recognized a substantial risk of harm by conversing with correctional officers
2  while plaintiff mounted the stairs.  Plaintiff alleges no facts demonstrating that the therapist was
3  aware that plaintiff had sustained additional injury in mounting the stairs, as opposed to just
4  experiencing pain from his recent arthroplasty.  Indeed, plaintiff states that the therapist was
5  unaware of what had happened, and continued to urge plaintiff to mount the stairs.  Such
6  allegations fail to meet the high bar required to demonstrate deliberate indifference.

7        After plaintiff sustained the dislocated kneecap, plaintiff claims that the therapist insisted
8  plaintiff continue to mount the stairs, but plaintiff refused, ultimately being returned to his room
9  by wheelchair at his request.  But because plaintiff alleges that the therapist was unaware of what
10 happened, such therapist could not have had actual knowledge of plaintiff's serious medical need
11 (the dislocated kneecap), which was not diagnosed until after the knee was x-rayed.  Thus, the
12 therapist's failed effort to persuade plaintiff to continue mounting the stairs also fails to
13 demonstrate deliberate indifference.  See Toguchi, 391 F.3d at 1059-60 (dismissing an expert
14 opinion that a prison doctor disregarded a serious risk of drug interactions because the expert
15 'lacked any insight into [the prison doctor's] subjective knowledge"); Mata v. Saiz, 427 F.3d 745,
16 760 (10th Cir. 2005) (defendant nurse who subjectively believed the plaintiff was not having a
17 heart attack and chest pain was relieved could not be found deliberately indifferent); Johnson v.
18 Quinones, 145 F.3d 164, 169 (4th Cir. 1998) (failure to diagnose pituitary tumor was not
19 deliberate indifference because doctors did not "draw the inference" from the observed
20 symptoms).  Plaintiff's allegations make clear that the physical therapist did not draw an
21 inference that plaintiff had suffered additional injury.  Moreover, because plaintiff refused to
22 follow the therapist's continued urgings, plaintiff did not suffer additional injury by continuing to
23 mount the stairs despite the therapist's urging.

24        For all of these reasons, plaintiff fails to state cognizable Eighth Amendment claims
25 against the physical therapist.
26 ////
27 ////
28 ////

b.  The Anesthesiologist

Plaintiff's allegations concerning blisters on his lower left shin also fail to state a cognizable Eighth Amendment claim.  First, the undersigned cannot find that the blisters on plaintiff's lower left shin constituted an objectively serious medical need.  Despite having surgery on October 12, 2016, plaintiff did not notice the blisters until around October 16, 2016.  Plaintiff articulates no pain associated with the blisters (but claims they resulted in permanent scars and tissue damage).  Such injury would not significantly impact plaintiff's daily activities, and a reasonable doctor would not consider blisters to the lower left shin worthy of further medical treatment.  Second, despite plaintiff's reference to patient discharge instructions from an October 12, 2018 medical visit where plaintiff complained of "venous insufficiency of leg," it is not plausible to connect plaintiff's subsequent complaint of venous insufficiency to blisters sustained on his left shin two years before.[1]  (ECF No. 14 at 30.)  Third, an unidentified LVN's speculation as to the cause of the blisters is insufficient to support a claim that the blisters were caused by the anesthesiologist.  Plaintiff does not allege that the LVN was present in the operating room or otherwise indicate where the LVN obtained such information.

For all these reasons, the undersigned finds that plaintiff fails to state a cognizable Eighth Amendment claim against the anesthesiologist.

c.  Dr. Cross

Plaintiff contends that Dr. Cross was deliberately indifferent during plaintiff's October 12, 2016 total left knee arthroplasty, by knowingly inserting material in plaintiff's left knee that caused his left leg to be longer than his right, and attempting to minimize the difference in Dr. Cross' report.  Plaintiff appended copies of Dr. Cross' medical reports to the operative pleading, and relies on them to support plaintiff's allegations.[2]  Plaintiff contends that Dr. Cross admitted the difference in leg length was caused by the polyethylene insert he deliberately selected and

---

[1] Venous insufficiency is defined as "inadequate drainage of venous blood from a part, resulting in edema or dermatosis."  449130 venous insufficiency, Stedmans Medical Dictionary 449130.

[2] Certain written instruments attached to pleadings may be considered part of the pleading.  See Fed. R. Civ. P. 10(c).

9

used for plaintiff's total knee arthroplasty.  (ECF No. 14 at 5, citing ECF No. 14 at 28 (exhibit 4).)

On October 12, 2017, Dr. Cross saw plaintiff via telemedicine for follow-up due to plaintiff's concern about leg length discrepancy. (ECF No. 14 at 22.) Plaintiff reported that the physical therapist measured plaintiff's legs and his leg is 1-1/2 inches longer than the other leg. Dr. Cross' plan noted he discussed with plaintiff

> in detail how an apparent leg length increase[] can occur as a result of realignment after a total knee replacement but that it's very difficult to increase[] leg length overall secondary to the ligamentous constraints about the knee. Also this patient had a mild flexion contracture this could add to the apparent leg length.

(ECF No. 14 at 22.) Dr. Cross ordered a scanogram/orbital roentgenogram of both lower legs "to evaluate for leg length discrepancy/inequality." (Id.) On October 24, 2017, a CT bone length study was performed, and the impression was reported as "lower extremity leg length is 10 MM greater than right lower extremity." (ECF No. 14 at 26.) On November 8, 2017, plaintiff was seen via telemedicine for follow-up of the ortho roentgenogram study results. Plaintiff "continued to complain of a limp secondary to his left leg being longer," and was having some back pain. (ECF No. 14 at 28.) Dr. Cross reported:

> Objective:  The x-ray results reveal a 10 cm [sic] leg length discrepancy of the left leg being longer secondary to his femur being 6 mm longer on this side but his tibialls [sic] 3 mm shorter leaving a difference a [sic] 7 mm which is basically the polyethylene insert for the knee replacement is [sic].  This represents no significant change from his normal anatomy.
>
> Assessment:  Slight leg length inequality not substantially different than his normal anatomy.
>
> Plan:  He'll benefit from a heel lift 5-10 mm in thickness for his opposite extremity to help compensate for his leg length difference. To be worn as needed.  Follow-up when necessary.

(ECF No. 14 at 28.)

Here, the CT bone length study confirms that following his left knee replacement, plaintiff's left leg is 10 mm longer than his right.[3]  Plaintiff concludes that because Dr. Cross

---

[3] Ten millimeters ("mm") is 0.3937 of an inch, or, just over 3/8 inch.

knowingly inserted material in plaintiff's left knee that caused his left leg to be longer than his right, such conduct demonstrates Dr. Cross' deliberate indifference. But plaintiff is mistaken.

Contrary to plaintiff's contention that Dr. Cross admitted the difference in leg length was caused by the insert he deliberately used for plaintiff's arthroplasty, Dr. Cross opined that the difference in plaintiff's leg lengths could have been caused by realignment after the knee was replaced, or by plaintiff's mild flexion contracture. (ECF No. 14 at 22.) Plaintiff's reliance on Dr. Cross' reference to the polyethylene insert is taken out of context. Dr. Cross referred to the insert in evaluating the radiologist's report concerning the difference in plaintiff's leg lengths. Simply because Dr. Cross noted the difference in lengths was basically the same as the insert does not raise an inference that the difference in length was caused by the insert, particularly in light of the doctor's prior opinion citing other causes.

But even taking as true plaintiff's contention that his leg was made longer due to the knee implant Dr. Cross intentionally used, such allegation constitutes negligence, or, at most, medical malpractice. Plaintiff cannot demonstrate Dr. Cross' deliberate indifference by simply concluding that he "knowingly insert[ed] material into plaintiff's left knee." Even assuming Dr. Cross used the wrong implant, such action would constitute, at most, medical malpractice. Performing a surgery incorrectly is not actionable as "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner. Estelle, 429 U.S. at 106; Snow v. McDaniel, 681 F.3d 978, 987-88 (9th Cir. 2012), overruled in part on other grounds, Peralta v. Dillard, 744 F.3d 1076 (9th Cir. 2014); Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012). Even assuming Dr. Cross erred, an Eighth Amendment claim may not be premised on even gross negligence by a physician. Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990).

Moreover, once Dr. Cross diagnosed the discrepancy in plaintiff's leg lengths, Dr. Cross prescribed plaintiff an appropriate heel lift to mitigate the difference in length. Such action does not constitute deliberate indifference. Similarly, to the extent Dr. Cross' report can be read as his effort to minimize the discrepancy in the length of plaintiff's legs, such effort, standing alone, does not amount to deliberate indifference. Dr. Cross acknowledged that the radiologist's report

////

reflected a discrepancy in plaintiff's leg lengths, and recommended that plaintiff be provided a heel lift 5-10 mm in thickness.

Therefore, plaintiff's allegations against Dr. Cross fail to state a cognizable Eighth Amendment claim.

## VI. Leave to Amend

Plaintiff has twice amended his complaint. Despite such amendments, plaintiff's allegations do not rise to the level of deliberate indifference, but instead constitute negligence or, at most, medical malpractice. Because plaintiff cannot amend his complaint to cure such defect, it would be futile to grant plaintiff further leave to amend. Accordingly, the court recommends that plaintiff's second amended complaint be dismissed without prejudice, but without leave to amend.

## VII. Other Pending Motions

### A. Motion for Injunctive Relief

Plaintiff seeks a preliminary and permanent injunction requiring medical professionals and staff at Pelican Bay State Prison, and at Shasta Regional Medical Center in Redding, California, to preserve all medical records, including notes, emails, logs, etc., pertaining to plaintiff's medical care in August and September of 2016. (ECF No. 16.) In addition, plaintiff seeks a preliminary and permanent injunction requiring all CDCR employees, assigned to transport and guard plaintiff during his care at Shasta Regional Medical Center, to preserve all records, notes, emails, recordings, etc. pertinent to such transport and security work.

"A preliminary injunction is an extraordinary remedy never awarded as of right." Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 24 (2008) (citation omitted). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co., 571 F.3d 873, 877 (9th Cir. 2009) (quoting Winter, 555 U.S. at 20). An injunction may only be awarded upon a clear showing that the plaintiff is entitled to relief. See Winter, 555 U.S. at 22 (citation omitted).

Initially, the court observes that medical records are commonly retained for lengthy periods. Indeed, California law requires retention of certain medical records. See 42 C.F.R. § 438.3(u). For example, hospitals are required to keep patient records for a minimum of seven years following discharge. Cal. Code Regs. tit. 22, § 70751. In addition, the California Department of Corrections and Rehabilitation ("CDCR") is required to "[r]etain patient health information for ten years after discharge from CDCR." Cal. Code Regs. tit. 15, § 3999.216(a)(3). In light of such retention laws, plaintiff cannot demonstrate that he is likely to suffer irreparable harm in the absence of preliminary relief in connection with his medical records.

Moreover, because the undersigned recommends dismissal of this action, plaintiff cannot demonstrate a likelihood of success on the merits.

Plaintiff's motion should be denied.

B.  Motion to Vacate Consent

On May 22, 2020, plaintiff filed a request to vacate the referral of this case to the magistrate judge and to transfer this matter to the district court judge, citing Rule 73(a)(3) of the Federal Rules of Civil Procedure. (ECF No. 17.) Plaintiff included no facts or arguments as to why the referral should be vacated. (Id.)

Because there is no Rule 73(a)(3),[4] the undersigned construes plaintiff's request as filed pursuant to Rule 73(b)(3), which addresses consent procedures, as follows:

> (3) Vacating a Referral. On its own for good cause -- or when a party shows extraordinary circumstances -- the district judge may vacate a referral to a magistrate judge under this rule.

Fed. R. Civ. P. 73(b)(3).

In light of plaintiff's failure to show extraordinary circumstances for vacating the referral, the undersigned recommends that plaintiff's motion be denied.

////

////

---

[4] Rule 73(a) states: "Trial by Consent. When authorized under 28 U.S.C. § 636(c), a magistrate judge may, if all parties consent, conduct a civil action or proceeding, including a jury or nonjury trial. A record must be made in accordance with 28 U.S.C. § 636(c)(5)." Fed. R. Civ. P. 73(a).

VII. Conclusion

In accordance with the above, IT IS HEREBY ORDERED that the Clerk of the Court is directed to assign a district judge to this case.

Further, IT IS RECOMMENDED that:

1. Plaintiff's second amended complaint (ECF No. 14) be dismissed without prejudice.

2. Plaintiff's motion for injunctive relief (ECF No. 16) be denied.

3. Plaintiff's motion to vacate the referral (ECF No. 17) be denied.

4. The Clerk of the Court be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **thirty** days after being served with these findings and recommendations, plaintiff may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  October 5, 2020

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/hane1836.56

14